THE COUNTY OF WINNEBAGO, Petitioner-Appellee, *v.* RICO CORPORATION, Defendant-Appellant.

(No. 72-145;

Second District—May 25, 1973.

Reno, Zahm, Folgate, Skolrood, Lindberg & Powell, of Rockford, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

The County of Winnebago filed a petition for condemnation of property of the defendant. The defendant filed a cross petition for damages to the remainder. The County, as petitioner, moved to dismiss the cross petition. The cross petition was dismissed and the defendant appeals.

The defendant is the owner of land located at the southeast corner of Route 20 and Mulford Road. The county seeks to widen Mulford Road and install a median strip from East State Street along and several hundred feet to the south of defendant's property. The parties agreed that the value of the land taken was $10,520. Defendant in its cross petition alleged that the value of the remaining premises was $200,000 when unaffected by the proposed widening and re-arranging of Mulford Road and that by the installation of the planned median strip on Mulford Road the value to its premises was reduced to $80,000, thus claiming a damage to the remainder of $120,000.

The premises of the defendant comprising an area of approximately 1.12 acres has a frontage of 215 feet on U.S. Highway 20 with no access, and a frontage of 250 feet on the east side of Mulford Road.

The basic contention of the defendant is that private property shall not be taken or damaged for public use without just compensation; that a defendant shall not be deprived of his property without due process; and that where private property is taken for such use, the compensation to which the owner is entitled is the amount necessary to put him in as good condition financially as he was prior to the taking. Supplementing this contention, he states that the damage to the land not taken is the difference between the fair cash market value before the property is taken and its fair cash market value after the taking. These are basic concepts that are correct. However, the fundamental question presented to this court is whether the property owner may recover for damages to his property by the placement of a median strip on a highway in front of his property.

This question has been considered by the courts of other jurisdictions in numerous instances. It is well considered and answered by the Supreme Court of Nebraska which stated:

> "* * * The general rule is that an abutting landowner has no vested interest in the flow of traffic past his premises and that any damages sustained because of a diversion of traffic is not compensable. This rule applies * * *. It likewise applies to the control of turns by double lines, islands, and median strips. * * *" *Painter v. State, Dept. of Roads* (1964), 177 Neb. 905, 131 N.W.2d 587, 590.

Closely related to this general rule is the corollary rule that the State or governmental body may diminish the flow of traffic by the construction of median strips under the police power of the State or governmental body. The majority rule followed in the vast majority of the states, is fundamentally based on both premises: first, that the abutting property owner has no vested right in the traffic flow by his premises; secondly, that this is a proper exercise of the police power of the State, and the damages resulting therefrom to the remainder are not therefore compensable. In the following cases the courts have held that the taking of the property with no compensable remuneration for damage to the remainder is under the police power of the court: *Holman v. State* (1950), 97 Cal.App. 237, 217 P.2d 448; *Langley Shopping Center, Inc. v. State Roads Com.* (1957), 213 Md. 230, 131 A.2d 690. In *Langley* the court said at page 693:

> "* * * [T]he construction of the median dividers does not constitute a taking of the plaintiff's property within the constitu-

tional meaning of the term and hence the Commission is not bound to pay damages to the abutting land owners."

(*Muse v. Mississippi State Highway Com.* (1958), 233 Miss. 694, 103 So.2d 839; *Springville Banking Co. v. Burton* (1960), 10 Utah 100, 349 P.2d 157; *Mondale v. Gannons Inc.* (1966), 275 Minn. 14, 145 N.W.2d 321; *Hayutin v. Colorado* (Colo. 1970), 485 P.2d 896.) In *State v. Fox* (1958), 53 Wash. 216, 332 P.2d 943, the court found that the taking was a combination of the eminent domain power of the state and the police power of the state and that "damages resulting from the exercise of police power are non-compensable." In *State v. Ensley* (1960), 240 Ind. 472, 164 N.E.2d 342, the Supreme Court of Indiana concluded that the property owner had no vested right in the free flow of traffic by his premises, and held that it was not necessary to determine the case on the police power of the state or governmental body. Likewise, the Appeals Court of Ohio adopted the same principle in *In re Appropriation of Easements for Highway and Slope Purposes* (1955), 101 Ohio App. 1, 137 N.E.2d 595. See also *Jacobson v. State* (Me. 1968), 244 A.2d 419, and *People v. Sayig* (1951), 101 Cal.App.890, 226 P.2d 702.

There is a minority rule relative to the construction of median strips and the subsequent diminishment of traffic to abutting property where the courts hold that an abutting property owner is entitled to damages to the remainder due to the loss of the diminishment of access. This is decidedly a minority view and as far as this court is able to ascertain is only applicable in the states of Alabama, Kansas and Arizona. *Mc Rea v. Marion County* (1931), 222 Ala. 511, 133 So. 278; *Riddle v. State Highway Commission* (1959), 184 Kan. 603, 339 P.2d 301; *State ex rel. Morrison v. Thelberg* (1960), 87 Ariz. 318, 350 P.2d 988.

All of the above cases involve the taking of a portion of the premises of an abutting land owner and a subsequent claim for damages to the remainder. This court is unable to find any case involving the construction of a median strip without the taking of the abutting land owner's property where the issue of compensable damages was litigated.

■■ The courts of Illinois have consistently held that damages due to loss of access are not recoverable as damage to the remainder. Illinois has adopted both principles, *i.e.*, that the construction of a median strip resulting in a diminishment of access to an abutting land owner is not an element of compensable damage to the remainder under both the police power and under the doctrine that an abutting land owner has no right to the free flow of traffic past his premises. As the court said in *Dept. of Public Works & Bldgs. v. Maddox* (1961), 21 Ill.2d 489, 494; 173 N.E.2d 448, 451:

"A corollary of the claim for damages because of loss of access is the claim for damages because of the construction of median

strips. There can be no question that the construction of such strips is a proper exercise of the police power. [Citation.] As we have indicated, there was considerable testimony regarding the question of access. Examination of the record discloses that the trial court acted properly in refusing to permit unrelated testimony on the construction of median strips."

Almost immediately following the *Maddox* decision we find the Supreme Court in *Dept. of Public Works & Bldgs. v. Mabee* (1961), 22 Ill.2d 202, 204-205, 174 N.E.2d 801, 802, stating:

"A number of States have considered this problem and concluded that an abutting property owner is not entitled to compensation for the diminished property value or loss of business caused by the diversion of traffic by a one-way traffic control device or the complete relocation of the highway. [Citations.] This conclusion is premised on the fact that an abutting owner has no property right in the continuation or maintenance of the flow of traffic past his property. We agree with the conclusion reached by these courts. The diminution in the value of land or the loss of business occasioned by a one-way traffic regulation that diverts a portion of the flow of traffic from in front of one's premises is the result of the exercise of the police power; it is not the taking or damaging of property within the meaning of our constitution; and it is not therefore compensable. [Citation.]

\* \* \* It is a well-established rule in this State that the right of access to an existing public street or highway is a valuable property right which cannot be taken away or materially impaired without just compensation. [Citations.] \* \* \* The rule cannot be applied, however, where the property owner's free and direct access to the lane of traffic abutting on his property has not been taken or impaired."

In *Mabee* the issue, as herein, was the construction of a median strip which limited access to one traffic lane of the highway. While the case of *Dept. of Public Works & Bldgs. v. Bloomer* (1963), 28 Ill.2d 267, 273, 191 N.E.2d 245, did not consider a question of diminution of value of the remainder because of a median strip, the court nonetheless stated at page 249:

"Nor does every factor that brings above a reduction in value represent a recoverable item of damage. An owner has no vested property right in the flow of traffic past his land, and losses produced by the alteration of traffic flow or the installation of traffic control devices confer no right to compensation."

The defendant contends that this court should not blindly follow the *Maddox, Mabee* and *Bloomer* cases. We have no authority to change the

law of Illinois which follows the almost universal principle that the construction of a median strip, as indicated herein, does not give rise to a claim for compensable damages to the remainder of an abutting property owner's premises. The judgment of the trial court is affirmed.

Affirmed.

T. MORAN and SEIDENFELD, JJ., concur.