JOHN T. MICZEK & another[1] *vs.* COMMONWEALTH.

No. 90-P-748.

Worcester. October 16, 1991 - February 12, 1992.

Present: DREBEN, GILLERMAN, & GREENBERG, JJ.

*Eminent Domain*, Right to damages. *Damages*, Eminent domain.

In an eminent domain action, the plaintiffs, farm stand owners whose business suffered after the State relocated a highway, were not entitled to recover compensation under G. L. c. 79, § 12, where the plaintiffs had no property right to have a particular flow of traffic maintained past their property and where the plaintiffs' access to their property, while less convenient, remained unimpaired. [108-110]

CIVIL ACTION commenced in the Superior Court Department on July 25, 1983.

The case was tried before *William C. O'Neil*, J.

*Hector E. Pineiro* for the plaintiffs.

*Mark S. Bourbeau*, Assistant Attorney General (*Stuart T. Rossman*, Assistant Attorney General, with him) for the Commonwealth.

GREENBERG, J. After a jury assessed damages of $14,900 in an eminent domain action based on the taking of a temporary slope easement, the trial judge allowed the Commonwealth's motion pursuant to Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974), directed a verdict in part for the defendant, and ordered a remittitur of $9,000.[2] The question for decision is

---

[1]Kim B. Miczek.

[2]The jury assessed the damages in response to special questions presented at trial. They awarded (1) $1,500 "for [the plaintiffs'] loss of use of the 240 square foot parcel actually taken during the three year period of the temporary easement" (questions 1, 2); (2) $4,500 for damages caused by the plaintiffs' "substantial temporary impairment of access to their property during the period of construction" (questions 3, 4); and (3) $9,000 representing "the loss of the fair market value of their property

whether the reduction in damages was proper. We review the judge's decision as matter of law and are free to reach our own conclusions. *Kosak* v. *MacKechnie*, 24 Mass. App. Ct. 20, 23 (1987). We affirm the judgment.

The case is before us on a statement of the evidence settled and approved pursuant to Mass.R.A.P. 8(c), as amended, 378 Mass. 933 (1979). The plaintiffs, husband and wife, owned land in a rural area of the town of Leicester. Their parcel, located along the north side of "Old Route 9" (Main Street), was improved by a single-family home and a greenhouse. The stretch of highway bordering the plaintiffs' property formed a considerable curve and was aptly known as "Breezy Bend." In 1980, the plaintiffs began farming their land and selling the produce from a stand strategically positioned at the midpoint of the bend. In 1981, the couple acquired an additional 2.59 acre rectangular strip of land directly across from the farm stand on the south side of Route 9 and subsequently began to cultivate corn on this parcel.

The Department of Public Works (Commonwealth) started work to straighten the road in September, 1982, apparently to eliminate a hazard to motorists. As part of the engineering plan, the Commonwealth made a temporary (three-year) taking of a 240 square foot triangular piece of the plaintiffs' cornfield at its southern edge abutting the relocated road, the "new" Route 9. (The new route was formed by connecting the terminal points of the curve.) Prior to the construction, the plaintiffs' farm stand was directly accessible to potential customers; thereafter, the plaintiffs' original tract, including the farm stand, fronted a secondary way and was neither as visible nor as accessible to potential customers. The plaintiffs claim they were forced into a Hobson's choice: either convert to a predominantly wholesale outlet or relocate the farm stand to the new Route 9. As a result, they had to acquire additional land and increase their own labor and expenditures.

---

[caused by] the permanent diversion of" traffic (questions 5, 6). The appeal is limited to the propriety of this last assessment.

The plaintiffs' claim presents a question undecided by the Supreme Judicial Court in *Malone* v. *Commonwealth*, 378 Mass. 74 (1979). In *Malone*, no portion of the plaintiffs' property was taken. The court held that the plaintiffs, gift shop proprietors whose business suffered after the State relocated a highway, were not entitled to damages for the diminution in the value of their land caused by the need for a detour. "Although the diversion of traffic may have caused some retrograde change in the highest and best use of the property, the property remained fully accessible to customers. Thus the loss of value was not compensable under our traditional approach." *Id.* at 81. Because no portion of the plaintiffs' property was taken, damages were determined under the second sentence of G. L. c. 79, § 12, which provides that "when no part of [the parcel] has been taken, regard shall be had only to such injury as is special and peculiar to such parcel . . . ."[3] The court reserved the question whether damages could ever be awarded for loss of property value caused by traffic diversion in a case where "only part of a parcel of land is taken," i.e., under the first sentence of G. L. c. 79, § 12, which provides that where "only part of a parcel of land is taken there shall be included damages for all injury to the part not taken caused by the taking or by the public improvement for which the taking is made . . . ." *Id.* at 77 n.6. The plaintiffs here contend that the temporary slope easement taking distinguishes their predicament from

---

[3]The first two sentences of G. L. c. 79, § 12, as amended by St. 1959, c. 626, § 4, read in full as follows:

"The damages for property taken under this chapter shall be fixed at the value thereof before the order of taking, and in case only part of a parcel of land is taken there shall be included damages for all injury to the part not taken caused by the taking or by the public improvement for which the taking is made; and there shall be deducted the benefit accruing to the part not taken unless it was stated in the order of taking that betterments were to be assessed. In determining the damages to a parcel of land injured when no part of it has been taken, regard shall be had only to such injury as is special and peculiar to such parcel, and there shall be deducted the benefit accruing to such parcel, unless it was stated in the order of taking, or if there was no taking in the order for the establishment, construction, alteration, repair or discontinuance of the public improvement which caused the injury, that betterments were to be assessed."

the one considered in *Malone* and entitles them to severance damages represented by the drop in fair market value of the entire parcel ($9,000). See note 2, *supra.*[4]

We begin our analysis with the governing statutory language. General Laws c. 81, § 7, permits the plaintiffs to recover compensation under G. L. c. 79, § 12, for "injury . . . caused to [their] *real estate . . .* by the laying out or alteration of a state highway . . ." (emphasis supplied). General Laws c. 79, § 12, provides in part: "[I]n case only part of a parcel of land is taken there shall be included damages for all injury to the part not taken *caused by the taking* or *by the public improvement for which the taking is made* . . ." (emphasis supplied). The judge let stand all the special verdict damages which directly flowed from the Commonwealth's taking of the temporary easement. See note 2, *supra*. The jury found these damages were caused by the temporary, partial taking during its period of enforcement. In contrast, the jury were not asked, and hence did not find, that the permanent damages under special verdict question number 6 — later disallowed by the judge — were "caused by the taking"; these damages were awarded for "the loss [in] the fair market value of [the plaintiffs' property] due to" the relocation of Route 9. Therefore, the plaintiffs may only recover the $9,000 under § 12 if the law permits recovery of damages "caused . . . by the public improvement" for the particular type of injury which they sustained.

We conclude that, although the diminution in value of the plaintiffs' property had an undeniable causal nexus to the "public improvement" implemented by the Commonwealth, the plaintiffs' claim — based on the assertion of a right to maintain the farm stand's physical relationship to the highway, and to receive the incidental business it generated as it existed before the relocation — is not the type of injury

---

[4]The plaintiffs do not complain, nor can they maintain, that their own or their patrons' access from and to the public roads was eliminated or rendered unreasonably burdensome. See *Betty Corp. v. Commonwealth*, 354 Mass. 312, 319 (1968). See also *Wine v. Commonwealth*, 301 Mass. 451, 458 (1938).

which is compensable under the statute.[5] See *LaCroix* v. *Commonwealth*, 348 Mass. 652, 657 (1965); *Malone* v. *Commonwealth*, 378 Mass. at 81-84. The factors discussed in *Malone* as reasons for not compensating this type of injury weigh as heavily in this case as in *Malone*. See *id.* at 82-84.

Thus, while the plaintiffs have a legal right of access to the general system of public streets, they have not acquired a right to have this particular route remain in its original configuration. As the court observed in *LaCroix* v. *Commonwealth*, 348 Mass. at 657, "a landowner is not entitled to compensation merely because his access to the public highway system is rendered less convenient, if he still has reasonable and appropriate access to that system after the taking." See also *Tassinari* v. *Massachusetts Turnpike Authy.*, 347 Mass. 222, 226-229 & n.2 (1964) (Cutter, J., dissenting). Access to the plaintiffs' farm stand was less convenient after the relocation, yet it remained unimpaired. The temporary taking of a portion of the plaintiffs' cornfield does not change the result.

*Roman Catholic Bishop of Springfield* v. *Commonwealth*, 378 Mass. 381 (1979), which the plaintiffs cite, is not to the contrary. That case involved a permanent taking of a drainage easement, and the permanent damage to the entire parcel was caused by the offensive noise from the highway. This type of interference with a property right has been considered compensable when accompanied by a taking. See *Walker* v. *Old Colony & Newport Ry.*, 103 Mass. 10, 14 (1869); *Roman Catholic Bishop of Springfield* v. *Commonwealth*, *supra* at 385. Noise represents a substantial interference with a property right. In contrast, a landowner has no

---

[5]The Commonwealth argues also that the temporary taking of the easement does not bring the plaintiffs' property within the first, rather than the second, sentence of G. L. c. 79, § 12. See note 3, *supra*. Because we decide that this case does not involve a type of injury which is compensable, we need not decide that question. We also do not need to decide whether, if the claim does fall under the first sentence, the damage to the property not taken must be "special and peculiar." See *LaCroix* v.*Commonwealth*, 348 Mass. 652, 657 (1965); *Roman Catholic Bishop of Springfield* v. *Commonwealth*, 378 Mass. 381, 386-387 (1979).

property right to have a particular flow of traffic maintained past his property.

Cases in a majority of other jurisdictions agree with this view. A "landowner has no vested property right in the continuation of the flow of traffic past his door . . . ." *Jacobson v. State Hy. Commn.*, 244 A.2d 419, 421-422 (Me. 1968) (stating majority rule consonant with our holding). Accord *County of Winnebago* v. *Rico Corp.*, 11 Ill. App. 3d 882 (1973); *State* v. *Cheris*, 153 Ind. App. 451 (1972); *Small* v. *Kemp*, 240 Kan. 113, 119 (1986); *Narciso* v. *State*, 114 R.I. 53 (1974). Cf. *Proprietors of the Charles River Bridge* v. *Proprietors of the Warren Bridge*, 36 U.S. (11 Pet.) 420, 536-538, 548-549 (1837). Contra *McRea* v. *Marion County*, 222 Ala. 511, 515 (1931) ("While the county may not be under any duty to the property owner to maintain the highway near his . . . store, . . . nor through his property, and may change its location through it, it cannot take any of his property to do so without . . . the payment of just compensation and damages as required by the Constitution and law"; the amount of such compensation and damage is measured by the effect of the project as a whole, including the fact that traffic no longer goes by or near the store, upon the value of the entire tract).

*Judgment affirmed.*